UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

CIVIL ACTION NO. 05-20

IN RE:

COOK AND SONS MINING, INC.                                    DEBTOR

_____

KWVA ENERGY, INC.,                                          APPELLANT,

v.                          **OPINION AND ORDER**

COOK AND SONS MINING, INC.,                                 APPELLEE.

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

KWVA Energy, Inc. ("KWVA") appeals from a Judgment (Bankr. Rec. No. 21) entered by

the bankruptcy court on December 8, 2004 in Bankruptcy Matter No. 03-70789, Adversary No. 04-

7076 finding that a contract between Cook and Sons Mining, Inc. (the "Debtor") and KWVA was

not in the ordinary course of the Debtor's business under 11 U.S.C. § 363 and that the Debtor could

therefore avoid the contract under 11 U.S.C. § 549(a)(1)(B). For the following reasons, the Court

AFFIRMS the Bankruptcy Court's Judgment.

**I.       FACTS.**

Prior to the bankruptcy court's December 8, 2004 Judgment, the parties jointly stipulated to

certain facts and exhibits in an Agreed Stipulation as to Facts and Exhibits. (Bankr. Rec. No. 9).  The

Court adopts the facts recited in that document and the exhibits attached to it.  The relevant facts are

summarized below.

**A.       Post-Petition Contract with KWVA.**

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code

(the "Code") on August 26, 2003 (the "Petition Date").  The Debtor's consultants in reorganization determined that the Debtor's in-house trucking operations were losing over $100,000 per month. According to the consultants, almost no coal companies owned their own coal trucks and performed their own hauling. Beginning in December, 2003, the consultants insisted that the trucking portion of the Debtors' business be outsourced and done on a contract basis with an independent hauler.

The consultants investigated hauling rates in the area including an offer made by KWVA. At least three suppliers, including KWVA, proposed rates to the consultants.  As part of its proposal, KWVA also offered to take over some leased and owned trucks from the Debtors. In addition, KWVA proposed that the Debtors take over some mining equipment owned by KWVA and needed in the Debtor's mining operations.

 The consultants concluded that the rates proposed by KWVA were fair, reasonable and competitive and they recommended that the Debtor's hauling and compaction be outsourced to KWVA. On October 16, 2003, the Debtor entered into a Coal Refuse Hauling and Compaction Agreement with KWVA.  (Bankr. Rec. No. 1, Complaint, Ex.1).  The term was five years. The contract was never approved by the Bankruptcy Court.  The parties stipulated that "[c]oal truck hauling agreements, including refuse and compaction agreements, are common in the coal mining industry.  Outside of bankruptcy, the KWVA Contracts, in various forms and for varying time periods, would be in the ordinary course of business between third parties."  (Bankr. Rec. No. 9, Stipulations, ¶ 14).

KWVA is owned by certain members of the Cook family who also owned the Debtor. KWVA's shareholders are Sandra Cook (one of the Cook brothers and sisters and one of the Debtor's shareholders); Ernestine Franks (one of the Cook brothers and sisters and Debtor's

shareholders); Betty Cook (wife of Mike Cook, a shareholder and Debtor's President); Pat Cook (wife of Randy Cook, a shareholder and Debtors' Secretary-Treasurer); Mark Cook (one of the Cook brothers and sisters and one of the Debtors' shareholders); and Steve Cook (one of the Cook brothers and sisters and one of the Debtor's shareholders). Randy Cook, Secretary-Treasurer of the Debtor, currently oversees KWVA's operations.

KWVA and the Debtor operated under the contract for several months. The Debtor operated until April 26, 2004 and used KWVA as its coal, refuse and compaction hauler but failed to pay certain invoices when it ran out of cash. The Debtor's assets were purchased by Coal-X. After Coal-X took over the Debtor's operations, it rejected the KWVA contract. The parties stipulated that "[i]f the KWVA contracts[1] are in the ordinary course of business and the Debtor was responsible for the breach thereof, the damages (and the amount of an Allowed Post-Petition Administrative Claim) would be $1,515,000." (Bankr. Rec. No. 9, Agreed Stipulations ¶ 15).

### B.      Debtor Seeks to Avoid the Post-Petition Contract.

KWVA has a listed administrative claim for $135,891.51. The Debtor concedes that amount is due KWVA as a post-petition administrative claim. (Bankr. Rec. No. 9, Stipulations, ¶ 12). The Debtor then filed an adversary complaint against KWVA seeking to avoid the contract under Code § 549 and to limit the amount of the administrative claim to $135,891.51 instead of KWVA's full damages as a result of the Debtor's breach of the long-term contract.   (Bankr. Rec. No. 1, Complaint).

In its complaint, the Debtor argued that the long-term and insider nature of the contract were

---

[1] KWVA and the Debtor also entered into a Coal Haul Agreement and two Equipment Rental Agreements. These agreements lapsed on confirmation of the plan on August 14, 2004 and KWVA asserts no claim for damages based on the lapsed agreements.

3

not "in the ordinary course of business" pursuant to Code § 363(b) and that, therefore, the contract was avoidable under Code § 549(a). The Debtor further argued that "[s]ince the Debtors never obtained Court approval of the KWVA Contracts, it does not owe any long-term damages and is not bound to perform except to the extent of actual invoices owed under Code § 549(b), allowable as administrative claims, and then only up to April 26, 2004." (Bankr. Rec. No. 1, Complaint ¶ 18).

### C.     Bankruptcy Court Hearing and Judgment.

The parties filed Motions for Summary Judgment (Bankr. Rec. Nos. 10 & 13). At the end of the hearing on the motions, the bankruptcy court cited to the Chapter 11 Operating Order which had been entered in the main bankruptcy case. (Bankr. Matter 03-70789, Rec. No. 3). The Chapter 11 Operating Order is entered in every Chapter 11 case and contains the following provision:

> TRANSFERS TO OR COMPENSATION OF DEBTOR OR INSIDERS
>
> During the pendency of this action, neither the debtor nor any insider shall receive any increase in compensation, whether in salary or fringe benefits or in any other form, without prior court approval after notice and hearing. This prohibition includes transfers of property to the individual debtor or to any insider. Unless and until the debtor in possession has obtained court approval after notice and hearing, the debtor in possession shall make no payments in payment of any debt, whether secured or unsecured, owed to an insider or to a creditor whose claim is either co-signed by or guaranteed by an insider.

The court stated, "[m]y view of this case. . . is that the Court's Chapter 11 Operating Order very clearly specifies what is expected and that whether it's ordinary course or not, the court mandates insider transactions be approved. . . ." (Bankr. Rec. No. 26, Tr. at 18-19). The court further stated, "the debtor's arguments, vis-a-vis ordinary course or not ordinary course might have otherwise carried the day, but I don't think I need to get there because I believe that the operating order is specific enough. . . it's mandatory and the lack of approval by the Court of this transaction

4

to me is sufficient to sustain the plaintiff's motion." (Bankr. Rec. No. 26, Tr. at 19-20).

The Debtor filed a Motion to Reconsider or to Clarify Opinion or to Make Additional Findings and Conclusions of Law. (Bankr. Rec. No. 18).  The Debtor's motion was premised on its erroneous belief that the bankruptcy court had relied on another provision of the Operating Order which provides that, pursuant to Code § 363(b), the Debtor shall not use, sell or lease any property of the estate other than in the ordinary course of business, except after notice and a hearing.  This provision essentially restates Code § 363(b)(1).

The bankruptcy court then entered its Judgment finding that the KWVA contract was not in the ordinary course of business and, therefore, pursuant to § 363(c)(1), notice and a hearing were required before the Debtor entered into it. The court granted the Debtor's Motion for Summary Judgment and ordered that, pursuant to 11 U.S.C. § 549(a)(1)(B), the KWVA contract was avoided. The bankruptcy court further ordered that KWVA was entitled to an administrative expense claim of $135,891.51.  KWVA now appeals.

## II.     JURISDICTION AND STANDARD OF REVIEW

The court finds that it does have jurisdiction of this appeal under 28 U.S.C. § 158(a), the bankruptcy court's Judgment having been final and the appellants having complied with Bankr.R. 8001(a) within the time allowed by Bankr.R. 8002(a).

When a matter is appealed to the district court from the bankruptcy court, the district court "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." *Annas v. Allard*, 272 B.R. 633,636 (E.D. Mich. 2002).  This Court will not overturn a bankruptcy court's factual findings unless they are clearly erroneous.  The bankruptcy court's conclusions of law will be reviewed *de novo*. *Myers v. Ostling*, 284 B.R. 614,

618 (E.D. Mich. 2002). Findings of fact are clearly erroneous in bankruptcy proceedings when the

reviewing court is "left with the definite and firm conviction that a mistake has been committed."

*Annas*, 272 B.R. at 636-37.

### III.   ANALYSIS.

### A.   11 U.S.C. § 363.

Pursuant to Code § 549, a debtor-in-possession[2] may avoid certain transfers of property that

occur after the commencement of the case if the transfer was unauthorized. 11 U.S.C. § 549(a).

Thus, whether the Debtor may avoid the contract with KWVA depends on whether the contract was

authorized. Whether the contract was authorized is, in turn, controlled by Code § 363(b)(1). Under

that provision, a debtor-in-possession's transactions, other than those in the ordinary course of

business, must be authorized by the court after notice and a hearing. In contrast, the debtor-in-

possession may enter into transactions that *are* in the ordinary course of business without notice or

a hearing. 11 U.S.C. § 363(c)(1).

Code § 363 is designed to allow a Chapter 11 debtor "the flexibility to engage in ordinary

transactions without unnecessary creditor and bankruptcy court oversight while protecting creditors

by giving them an opportunity to be heard when transactions are not ordinary." *In re Roth American,*

*Inc.*, 975 F.2d 949, 952 (3rd Cir. 1992). The purpose of requiring notice and hearing for transactions

that are not in the ordinary course of business is "so that creditors, who have a vital interest in

maximizing realization from assets of the estate, have an opportunity to review the terms of the

proposed transaction and to object if they deem the terms and conditions are not in their best

---

[2] Code § 549 specifically provides for the trustee's avoidance rights. Nevertheless, Code § 1107(a) grants a debtor-in- possession "all the rights" of a trustee with certain exceptions not applicable here.

interest." *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998).

"The showing of ordinary course of business assures that neither the debtor nor any of its creditors can do anything abnormal either to dissipate assets or gain inappropriate advantage over other creditors." *Id.* If a transaction is undertaken that is not in the ordinary course of business without notice and a hearing, it may be avoided under Code § 549(a)(2)(B). *In re Roth American*, 975 F.2d at 952 n.3.

**B.     Horizontal and Vertical Dimension Tests.**

Neither the Code nor its legislative history provides a framework for analyzing whether particular transactions are or are not in the ordinary course of a debtor's business for the purpose of Code § 363. "Typically courts examine the 'horizontal' and 'vertical' dimensions of a debtor's business to address these policies reflected in the Code and to determine whether a transaction is outside the ordinary course of business." *In re Crystal Apparel, Inc.*, 220 B.R. at 831.

The horizontal inquiry is an objective test asking whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. *In re Roth American, Inc.*, 975 F.2d at 953. For example, "raising a crop would not be in the ordinary course of business for a widget manufacturer." *In re Waterfront Companies, Inc. v. Johnson*, 56 B.R. 31, 35 (Bankr. D. Minn. 1985).

The vertical dimension examines "the reasonable expectations of interested parties as to this particular debtor-in-possession." *In re Crystal Apparel, Inc.*, 220 B.R. at 831. "Even though something is the type of transaction in which this debtor could be expected to take part, is it the type of transaction that is in the *ordinary* course of business? Some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary."

*In re Waterfront Co., Inc.*  56 B.R. at 35.  "[W]ith bankruptcy come certain obligations to creditors, including affording creditors the right to be heard when the debtor proposes to do something beyond the ordinary." *In re Crystal Apparel, Inc.*, 220 B.R. at 833 (quoting *In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994)).  Creditors have a right to consider whether the proposed transaction "imposes a financial cost that exceeds the possible benefit of entering into the agreement and also exceeds the possible detriment that will occur if the debtor-in-possession does not enter into the agreement." *Id.*  Thus, the issue is whether the transaction "is the type of transaction which creditors would expect to have advance notice of and have a chance to object to." *In re Waterfront Co., Inc.,* 56 B.R. at 35.

"The primary focus. . . is on the debtor's pre-petition business practices and conduct, although a court must also consider the changing circumstances inherent in the hypothetical creditor's expectations." *In re Roth American, Inc.*, 975 F.2d at 953 (quotations and citation omitted).  "The 'vertical dimension' focuses on the debtor's internal operations, comparing the debtor's prepetition business with its postpetition conduct." *United States ex rel. Harrison v. Estate of Deutscher,* 115 B.R. 592, 598 (M.D. Tenn. 1990). "In comparing prepetition and postpetition conduct, the vertical dimension assumes the perspective of a hypothetical creditor and assesses whether the transaction at issue subjects the creditor to economic risks of a nature different from those accepted when credit was extended." *Id.*  "Under this test, the size, nature and type of the business, and the size and nature of the transactions in question are relevant to determine whether the transactions are ordinary." *Id.*

C.    **Bankruptcy Court's Judgment.**

In its Judgment, the bankruptcy court took judicial notice of the Chapter 11 Operating Order

8

entered in the main case and specifically the provision quoted above titled "Transfers to and Compensation of Debtors." (Bankr. Rec. No. 21). The bankruptcy court stated that the provision was "a clear indication that this court will not look favorably upon transactions between the debtor and insiders unless there is 'court approval after notice and a hearing.'" The bankruptcy court further stated that the provision should have been a "red flag, an alarm" to the parties that contractual obligations between them would be at risk without prior court approval.

The bankruptcy court further found that, "[t]he arrangement between the parties, which involved cross-leasing of assets of two companies, was not in the ordinary course of business of [the Debtor]. Although coal truck hauling agreements, including refuse and compaction agreements, are common in the coal mining industry, before the transaction between these parties, the debtor had done all of its own hauling. Therefore, the arrangement was not only new between the debtor and KWVA, it also was an entirely new way for the debtor to do business."

The bankruptcy court noted that the Debtor had stipulated that the defendant was owed an administrative expense of $135,891.51. The bankruptcy court then granted the Debtor's Motion for Summary Judgment and ordered that KWVA was entitled to an administrative expense claim in the stipulated amount as an "actual and necessary expense of preserving the bankruptcy estate."

### D.    The Bankruptcy Court Correctly Considered the Vertical Dimension of the Debtor's Business including its Pre-petition Conduct.

On appeal, KWVA appears to argue that the bankruptcy court erred as a matter of law in requiring that the contract meet both the horizontal and vertical tests in order to be deemed "ordinary course of business" under Code § 363. KWVA argues that "there is nothing to the notion that there are two threshold 'tests,' each of which must be met for the transaction to be deemed 'ordinary

9

course.'" (Dist. Ct. Rec. No. 6, Appellant's Brief at 9).

As part of this argument,  KWVA also appears to argue that the bankruptcy court erred as a matter of law in comparing the pre-petition and post-petition business practices of the Debtor in order to determine if the contract was "ordinary" under Code § 363. KWVA argues that the bankruptcy court "created and rigidly applied a new test for 'ordinary course': that if the particular debtor had not previously entered into the specific type of agreement at issue, that agreement could not be in the ordinary course even though it is consistent with industry practices generally."  (Dist. Ct. Rec. No. 6, Appellant's Brief at 11-12). These legal issues  will be reviewed *de novo*.

Again, the Code does not specify how a transaction should be analyzed to determine whether it is in the ordinary course of a debtor's business under Code § 363.  Nevertheless, since the *In re Waterfront Companies, Inc.* decision in 1985, courts have examined *both* the horizontal and vertical dimensions of the debtor's business to determine its nature.  *See*, *Committee v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (stating that *at least* two dimensions of the debtor's business – the horizontal and vertical –  are examined when determining ordinariness); *United States ex rel. Harrison*, 115 B.R. 592 at 598 (stating that courts have recognized that the concept of "ordinary course of business" comprises at least two dimensions and citing cases); *In re Roth American, Inc.*, 975 F.2d at 952 (stating that courts engage in a "two-step" inquiry for determining whether a transaction is in the "ordinary course of business": a "horizontal dimension" test and a "vertical dimension" test); *In re Crystal Apparel, Inc.* , 220 B.R. at 831 (stating, "if either dimension of the test is not satisfied, the disputed transaction is not in the ordinary course of business."); *In re Media Central, Inc.*, 115 B.R. 119, 124 (Bankr. E.D. Tenn. 1990)("If either test or dimension is not satisfied, most likely the disputed transaction is not in the ordinary

10

course of business."); *Streetman v. United States (In re Russell)*, 187 B.R. 287, 292 (W.D. Ark. 1995) ("ordinarily, a transaction must satisfy both tests in order to be considered in the ordinary course of business.").

It is true that "changes between prepetition and postpetition business activity alone are not *per se* evidence of extraordinariness." *In re Johns-Manville Corp.*, 60 B.R. at 617. Nevertheless, under the vertical dimension test, courts "have logically looked first at the debtor's prepetition business practices and conduct." *Id.* "The 'vertical dimension' focuses on the debtor's internal operations, comparing the debtor's prepetition business with its postpetition conduct." *United States ex rel. Harrison*, 115 B.R. at 598.

Thus, the bankruptcy court did not err in considering the contract under both the horizontal and vertical tests in determining whether it was in the "ordinary course of business" under Code § 363. The bankruptcy court also correctly compared the pre-petition and post-petition business practices of the Debtor in order to determine if the contract was "ordinary" under Code § 363. As will be explained further below, in determining that the contract was extraordinary, the bankruptcy court did not solely look to the pre-petition business practices of the Debtor but correctly considered it as one factor in determining whether the contract was "ordinary."

> **E.      The Bankruptcy Court did not Err in Concluding that the Contract was not Ordinary.**

The bankruptcy court's ultimate determination that the contract was not "in the ordinary course of business" is an issue of fact and will be reviewed under the clearly erroneous standard. *See In re Cedar Tide Corp.*, 859 F.2d 1127, 1133 (2nd Cir. 1988).

 The parties' stipulation regarding the ordinary nature of the contract is not dispositive of the

issue of whether the contract meets the test for "ordinary course of business" under § 363. The parties' stipulated that "[c]oal truck hauling agreements, including refuse and compaction agreements, are common in the coal mining industry. Outside of bankruptcy, the KWVA Contracts, in various forms and for varying time periods, would be in the ordinary course of business between third parties." This may be evidence that the contract was of the sort commonly undertaken by companies in the industry and, therefore, evidence of whether the contract meets the horizontal test for "ordinary." Nevertheless, that does not end the matter.

In order for a contract to meet the test for "ordinary course of business" under § 363, it must also be considered under the vertical dimension test. Under this test, the issue is whether the transaction is the type of transaction which creditors would expect to have advance notice of and a chance to object to. As discussed, the focus is on the Debtor's internal operations, comparing the Debtor's prepetition business with its postpetition conduct.

Pre-petition, the Debtor had no coal hauling and compaction agreements. It did all of its hauling itself. Thus, there can be no dispute that the KWVA contract was a departure from the Debtor's pre-petition business practice and "extraordinary" for this particular Debtor. Not only did the Debtor depart from prior business practice by outsourcing its coal hauling, but it outsourced the hauling services to its insiders. These factors together with the 5-year term of the contract render it the type of transaction creditors would expect to have notice of and a chance to object to. Thus, the bankruptcy court did not err in finding that the contract was not in the "ordinary course of business" for this Debtor under Code § 363. Accordingly, the contract was avoidable under Code § 549.[3]

---

[3] It would appear that, the contract have been avoided, KWVA has no basis for an administrative claim in any amount based on the contract. Here, however, the parties stipulated to the bankruptcy court that KWVA was entitled to an administrative claim of $135,891.51. (Bankr. Rec. No. 9, Stipulations ¶ 12). On appeal, neither party

The provision of the Operating Order titled "Transfers to or Compensation of Debtors or Insiders" should have served as a red flag to the Debtor and its insiders that this transaction was one that its creditors are expected to receive notice of and have a chance to object to before its approval. The bankruptcy court did not avoid the contract based on the Operating Order. Instead, it considered the Order as one factor in determining whether this contract between a debtor and its insiders was one that creditors would expect to have a chance to object to. Because the Order was only one factor in the bankruptcy court's conclusion, the Court need not decide whether it was proper for the bankruptcy court to consider the Order when it was not in the record of this Adversary Proceeding. The Court notes, however, that KWVA's owners were the Debtor's owners and, thus, knew of the Order.

## IV.    CONCLUSION.

For all the above reasons, the bankruptcy court's Judgment (Bankr. Rec. No. 21) is **AFFIRMED**.

This 30th day of September, 2005.



Signed By:

_**Karen K. Caldwell**_

**United States District Judge**

---

has objected to the bankruptcy court's order that KWVA is entitled to an administrative claim in that amount. Thus, this Court will not address that issue.

13